**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:06CR125 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| CURTIS RICHARDSON, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress filed by defendant Curtis Richardson (Richardson) (Filing No. 18). Richardson is charged in the Indictment with the possession with the intent to deliver more than 50 grams of "crack" cocaine on February 17, 2006, in violation of 21 U.S.C. § 841(a)(1). Richardson seeks to suppress all physical evidence and any of Richardson's statements to law enforcement officers following Richardson's detention at the Greyhound Bus Depot in Omaha, Nebraska, on February 17, 2006. An evidentiary hearing was held on Richardson's motion on July 17, 2006. During the hearing, the court heard the testimony of Investigators Richard Lutter (Investigator Lutter) and Anthony Satterfield (Investigator Satterfield) of the Nebraska State Patrol (NSP). A transcript of the hearing (TR.) was filed on July 24, 2006 (Filing No. 26).

**FINDINGS OF FACT**

On February 17, 2006, Investigators Lutter and Satterfield were working at the Greyhound Bus Depot (bus depot) in Omaha, Nebraska, as part of a commercial interdiction unit (TR. 6, 41). Officers in the commercial interdiction unit monitor commercial transportation, including airports, train stations, and bus stations, in order to detect persons transporting controlled substances or other contraband (TR. 5). Investigators Lutter and Satterfield arrived at the bus depot around 5:00 a.m. (TR. 6). Investigator Lutter began his usual routine of checking passenger manifest lists for incoming Trailways buses (TR. 6). Investigator Lutter testified he looks for indicators which are consistent with drug couriers (TR. 6). Some of the indicators are purchase of the ticket on the same day of travel, purchase of a one-way ticket, purchase of the ticket with cash, and a ticket coming into the

Omaha area from what is considered a source area for controlled substances (TR. 6-7). Investigator Lutter noted a Tyrone Green on the manifest for Trailways Bus Number 1402 had purchased his one-way bus ticket with cash one hour before departure from Claremont, California (TR. 6-7). Trailways Bus Number 1402 was scheduled to arrive in Omaha at 5:30 a.m. on February 17, 2006 (TR. 7).

Upon arrival of the bus at the bus depot, Investigator Lutter went into the main terminal to watch for any passengers who may be exiting through the terminal indicating they may be staying in Omaha (TR. 7). Investigator Lutter observed Richardson enter the terminal and exit through the terminal's north doors suggesting Richardson was not going to continue travel on the bus (TR. 8). Investigator Lutter followed Richardson out of the terminal doors to the steps area at the north porch (TR. 9). Investigator Lutter observed Richardson talking on a cell phone and overheard Richardson asking "where they were" (TR. 9). After Richardson concluded his telephone conversation, Investigator Lutter walked to Richardson at the top of the stairs and spoke to Richardson (TR. 9).

Investigator Lutter identified himself as a law enforcement officer and presented his badge (TR. 10). Investigator Lutter informed Richardson he was not under arrest or in any kind of trouble and asked if Richardson was willing to speak with Investigator Lutter (TR. 10). Richardson agreed (TR. 10). Investigator Lutter asked to see Richardson's bus ticket (TR. 10). Richardson produced a Greyhound bus ticket in the name of Tyrone Green (TR. 10). Investigator Lutter recognized the name as the same name he noticed earlier when checking the bus passenger list (TR. 10). Investigator Lutter asked for some identification and Richardson produced a California identification card in the name of Tyrone Green (TR. 10). Investigator Lutter asked about Richardson's itinerary at which time Richardson became very nervous and failed to maintain eye contact with Investigator Lutter (TR. 10-11). As Investigator Lutter was talking with Richardson, Richardson was looking away and looking up and down the street giving Investigator Lutter the impression that Richardson was looking for a place to run (TR. 11).

Investigator Lutter told Richardson that Investigator Lutter's role at the bus terminal was to watch for people transporting illegal items such as guns, drugs, knives, and explosive devices and asked Richardson if Richardson had any of those items (TR. 11).

Richardson stated no and that Investigator Lutter could "look through all his stuff" (TR. 11-12). At the time, Richardson was carrying one bag (TR. 12). Investigator Lutter asked Richardson if he would give permission to search the bag (TR. 12). Richardson said "Go ahead" (TR. 12). Richardson bent over and began to remove items from the bag and Investigator Lutter stopped him and asked if was all right for Investigator Satterfield to conduct the search (TR. 12). Richardson stood up, turned away from the bag with his arms in the air and stepped back from the bag (TR. 12). Investigator Lutter asked permission to search Richardson's person, whereupon Richardson turned and faced Investigator Lutter and held his hands away from his body (TR. 13). As Investigator Lutter proceeded to search Richardson's left leg area, Richardson stepped away from Investigator Lutter and reached into his sock and pulled out a cigar (TR. 13). Richardson handed the cigar to Investigator Lutter and stated that was all he had (TR. 13). Investigator Lutter examined the cigar, noted it was unwrapped, and asked Richardson if the cigar had been loaded with marihuana (TR. 13-14). Richardson stated that it was not as it was a new cigar which was unwrapped (TR. 14). When Investigator Lutter reached for Richardson's leg again to complete the search, Richardson reached into his sock a second time and removed a $1 bill and unfolded it to reveal a small amount of marihuana (TR. 14). Investigator Lutter set the marihuana on the ground so that Investigator Satterfield could see it and then took a hold of Richardson's arm at the same time as advising Richardson he was under arrest for possession of marihuana (TR. 14). Richardson pulled away from Investigator Lutter, became very agitated, and tried to run from Investigator Lutter (TR. 14). Assisted by Investigator Satterfield, Investigator Lutter apprehended Richardson by taking him to the ground and handcuffed Richardson behind his back (TR. 15).

Richardson was escorted to the rear of the bus terminal where the search of Richardson's person and property was completed (TR. 15). Inside the bag carried by Richardson was found 263 grams of "crack" cocaine (TR. 15). Richardson was advised of his **Miranda** rights, asked about the drugs found, and declined to answer those questions but did provide his true name and identification (TR. 15).

## LEGAL ANALYSIS

Richardson argues the encounter between Investigator Lutter and himself was not consensual, he was detained without reasonable suspicion, and he did not consent to the search of his person or luggage.

Encounters between the police and citizens fall into three general categories:

(1) consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment, **see, e.g., *Florida v. Bostick***, 501 U.S. 429 (1991); ***Florida v. Royer***, 460 U.S. 491 (1983); ***United States v. Tarantola***, 332 F.3d 498, 499 (8th Cir. 2003); ***United States v. Jones***, 269 F.3d 919, 925-26 (8th Cir. 2001); ***United States v. Hathcock***, 103 F.3d 715, 718-19 (8th Cir. 1997); ***United States v. Robinson***, 984 F.2d 911, 913 (8th Cir. 1993);

(2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, **see, e.g., *United States v. Sokolow***, 490 U.S. 1 (1989); ***Reid v. Georgia***, 448 U.S. 438 (1980); ***Terry v. Ohio***, 392 U.S. 1 (1968); ***United States v. Maltais***, 403 F.3d 550, 554 (8th Cir. 2005); ***United States v. Bustos-Torres,*** 396 F.3d 935, 942 (8th Cir. 2005); and

(3) physical arrests, which must be supported by probable cause. ***U.S. Const. amend. IV.***

The issue is whether the initial contact between law enforcement and the defendant was a purely consensual encounter or an investigatory detention or seizure. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." ***Terry***, 392 U.S. at 19 n.16. A seizure does not occur when a police officer approaches an individual and merely questions him or asks to examine his identification -- so long as the officer does not convey a message that compliance with his request is required. ***Bostick***, 501 U.S. at 434; **see also *United States v. Drayton***, 536 U.S. 194, 200-01 (2002). If "a reasonable person would feel free 'to disregard the police and go about his business,'" the encounter is consensual and no reasonable suspicion is required. ***Id***. (**quoting *California v. Hodari D.***, 499 U.S. 621, 628 (1991)). "It is well established that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the

street or in another public place . . . [and] putting questions to him if the person is willing to listen." ***United States v. Green***, 52 F.3d 194, 198 (8th Cir. 1995) (citations omitted). A request for information does not turn consensual questioning into an investigatory stop. ***United States v. Pena-Saiz***, 161 F.3d 1175, 1177 (8th Cir. 1998); ***United States v. Poitier***, 818 F.2d 679, 682-83 (8th Cir. 1987). Further, as long as a defendant was not selected for an approach for any purely discriminatory reasons, e.g., race or ethnicity, the fact law enforcement chose to approach a particular defendant is without constitutional implication.

The government has the burden to prove the initial encounter was voluntary, or that justification otherwise existed for each increasingly intrusive restraint on the defendant. **See** ***Missouri v. Seibert***, 542 U.S. 600, 609 n.1 (2004); ***United States v. Escobar***, 389 F.3d 781, 785 (8th Cir. 2004) ("The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority."). "The determination of which police-citizen contacts fall within the regulation of the Fourth Amendment and which do not is a fact intensive one which turns upon the unique facts of each case." ***Jones***, 269 F.3d at 925.

Investigator Lutter approached Richardson and asked Richardson's permission to talk with him. Investigator Lutter did not convey or imply Richardson had to comply with Investigator Lutter's request. The court finds the encounter between Investigator Lutter and Richardson to be a consensual encounter.

A consent search must be voluntary. "A search may be constitutionally valid either where it is supported by a reasonable suspicion or by valid consent." ***United States v. Morris***, 910 F. Supp. 1428, 1446 (N.D. Iowa 1995) (internal citations omitted). "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." ***Id.*** (internal citations omitted). The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." ***Ohio v. Robinette,*** 519 U.S. 33, 40 (1996). The court finds Richardson consented to the search of his person and bag. Further, it was Richardson himself who provided the $1 bill which contained marihuana to

Investigator Lutter. The search of Richardson's person was lawful. The search of Richardson's bag was also lawful as Richardson consented to the search.

Furthermore, even if the search of Richardson's bag was not pursuant to a voluntary consent, the search of the bag would be justified as incident to Richardson's arrest. ***Rawlings v. Kentucky***, 448 U.S. 98 (1980). Richardson was arrested upon probable cause when Richardson provided Investigator Lutter with the marihuana contained in the $1 bill. Accordingly, Richardson was lawfully arrested and he and the bag he was carrying were searched incident to that arrest.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Richardson's motion to suppress (Filing No. 18) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of September, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge