IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:06CR125 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| CURTIS RICHARDSON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 27), issued by Magistrate Judge Thomas D. Thalken, recommending denial of the Motion to Suppress (Filing No. 18) filed by the Defendant, Curtis Richardson ("Richardson"). Richardson filed a Statement of Objections to the Report and Recommendation and a supporting brief (Filing Nos. 28, 29), as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Richardson is charged in an Indictment (Filing No. 1), with knowingly and intentionally possessing with intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of cocaine base. Richardson seeks an order suppressing and excluding from evidence (1) any and all articles taken from Richardson, and (2) all statements that were made by Richardson, as a result of a search conducted on February 17, 2006.

Following an evidentiary hearing, Judge Thalken issued a Report and Recommendation in which he concluded: Richardson consented to the search of his person and bag; the search of his person and bag was lawful; Richardson was lawfully arrested; and the search of Richardson's bag was also a lawful search incident to his

arrest. On the basis of these determinations, Judge Thalken recommended that Richardson's motion be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Thalken provided a detailed account of the relevant events surrounding the conversation between the police and Richardson, the search, and the arrest. The Court has considered the transcript of the hearing conducted by Judge Thalken (Filing No. 26). The Court also carefully reviewed the briefs filed by the government and the Defendant (Filing Nos. 29, 30). Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Thalken's factual findings in their entirety.

## FACTUAL BACKGROUND

On February 17, 2006, Investigators Richard Lutter ("Investigator Lutter") and Anthony Satterfield ("Investigator Satterfield") were working at the Greyhound Bus Depot in Omaha, Nebraska, as part of a commercial interdiction unit. (TR 6, 41). Investigators Lutter and Satterfield arrived at the bus depot around 5:00 a.m., and reviewed the passenger list for a bus due to arrive around 5:30 a.m. After looking at the passenger list, Investigator Lutter noted that one passenger, Tyrone Green, had purchased a ticket in a

manner consistent with some of the indicators of a drug courier. Those indicators included a ticket purchase the same day of travel, within an hour of the departure time of the bus; purchase of a one-way ticket; the ticket was paid for in cash; and the passenger was coming from Claremont, California. (TR 6–7).

Investigator Lutter then waited for the 5:30 a.m. bus to arrive, and after it arrived he watched for any passengers to walk outside the terminal, which would suggest that those passengers were planning to stay in Omaha. Investigator Lutter observed Richardson leave through the terminal doors onto the north porch. (TR 9). He approached Richardson; showed Richardson his badge; and explained to Richardson that he was a police officer, that Richardson was not in any kind of trouble, and asked Richardson if he would be willing to speak with Investigator Lutter. Richardson answered yes. (TR 10). Investigator Lutter asked for Richardson's bus ticket, which he gave to Investigator Lutter. The name on the ticket was Tyrone Green. Investigator Lutter noticed that this name matched the name previously identified as suspect from the passenger list. Investigator Lutter then asked for identification, and Richardson produced a California license with the name Tyrone Green. (TR 10).

Investigator Lutter then explained his role as an officer at the bus depot looking for people possibly transporting illegal items, such as weapons, guns, drugs, knives, and explosive devises. He then asked Richardson if Richardson had any of those items; Richardson answered no, and that Investigator Lutter could look through all his belongings. (TR 11–12). Investigator Lutter then asked if he could have permission to conduct a search of Richardson's duffle bag; Richardson answered "go ahead." (TR 12, 43). Richardson himself then began to remove the items from his bag, and Investigator Lutter

3

asked if it was alright if Investigator Sattlefield conducted the search. Richardson stood up, turned away from the bag with his arms in the air, and stepped back. (TR 12).

Investigator Sattlefield then started to search through Richardson's bag, and Investigator Lutter asked Richardson for permission to search his person. Without saying anything, Richardson turned and faced Investigator Lutter with his arms up away from his body. (TR 13). During the course of Investigator Lutter's search of Richardson's left leg, Richardson stepped away, and pulled an unwrapped cigar out of his left sock. Investigator Lutter examined the cigar, handed it back to Richardson, and then reached to continue searching Richardson's person. Richardson reached into his sock a second time and pulled out a folded dollar bill containing a small amount of marijuana. (TR 13–14). Investigator Lutter told Richardson he was under arrest for possession of marijuana, at which point Richardson tried to pull away from Investigator Lutter. Investigator Lutter, Investigator Sattlefield, and a third investigator, Investigator Jason Scott, brought Richardson to the ground and apprehended him on the sidewalk in front of the main terminal. (TR 15, 27). Richardson was escorted to a rear room of the main terminal, read his *Miranda* rights, and searches of his body and his bag were completed. (TR 17). Inside his bag, the investigators found 263 grams of crack cocaine. (TR 15).

## ANALYSIS

The Defendant objects to portions of Judge Thalken's Report and Recommendation, stating that:

1. The consent to search Richardson's person and bag was not consensual and therefore unconstitutional; and

    2.    Officer Lutter did not have probable cause or reasonable suspicion to detain, search, and arrest Richardson.

Each of these objections will be discussed in turn below.[1]

*1. Consent to Search Person and Bag*

Even if a police officer has neither probable cause nor a warrant, that officer may search an area "if [he or she] obtain[s] a voluntary consent from someone possessing adequate authority over the area." *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (citing *United States v. Matlock*, 415 U.S. 164, 171 & n.7 (1974)). Consent is voluntary if it is "'the product of an essentially free and unconstrained choice by its maker.'" *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). "This determination depends upon the totality of the circumstances in a particular case, including 'both the characteristics of the accused and the details'" of the environment in which the consent was given. *Id.* at 380–81 (quoting *Bustamonte*, 412 U.S. at 226).

The individual characteristics of the accused that a court should consider when examining the totality of the circumstances include "(1) age; (2) general intelligence and education; (3) whether an individual was under the influence of drugs, alcohol or otherwise; (4) whether an individual was informed of his or her *Miranda* rights prior to the consent; and (5) whether an individual had experienced prior arrests so that he or she was aware of the

---

[1] Richardson, in his Statement of Objections (Filing No. 28), sets forth nine specific objections to the Report and Recommendation of Judge Thalken. However, in his Brief in Support of Objections (Filing No. 29), Richardson only specifically sets forth and discusses those two objections listed in the body of this Memorandum and Order. Under NECrimR 57.3(a), "A party failing to file a brief in support of [an] objection may be deemed to have abandoned the objection." Nevertheless, it is noted that all nine of the objections listed in Filing No. 28 are embraced within the two main objections discussed in the body of this Memorandum and Order.

protections the legal system affords to suspected criminals." *United States v. Hathcock*, 103 F.3d 715, 719 (8th Cir. 1997) (citing *Chaidez*, 906 F.2d at 381).

Further, the details of the environment in which consent was given that a court should consider include "(1) the period of time the individual was detained or questioned; (2) whether the police threatened, physically intimidated, or punished the individual; (3) whether police made promises or misrepresentations, upon which the individual relied; (4) whether the individual was in custody or under arrest at the time consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether the individual stood by silently while the search occurred." *Id.* at 719–20 (citing *Chaidez*, 906 F.2d at 381).

Because "the Fourth Amendment requires only that the police reasonably believe the search to be consensual," *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 185–86 (1990); *United States v. Sanchez*, 32 F.3d 1330, 1335 (8th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995)), this inquiry does not end with deciding whether an individual has actually consented to a search. Rather, the government must prove either that the individual consented to the search, or that the officers reasonably believed consent was given. Moreover, an officer does not need to receive a verbal affirmation reasonably to believe an individual has consented to a search. Rather, it has been established by the Eighth Circuit Court of Appeals that consent may reasonably be inferred from behavior. *See United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2003) (noting that the court in *United States v. Mendoza-Cepeda*, 250 F.3d 626 (8th Cir. 2001), found that "a suspect who raised his arms in response to the investigator's

6

request to touch his midsection was found to have consented to the touching"). In other words, a totality-of-the-circumstances examination does not focus just on an individual's words, but rather those words are considered in conjunction with his or her actions.

Richardson objects to the conclusion that the consent for the search of his person and bag was voluntary given. Specifically, Richardson argues that he was not given *Miranda* warnings prior to his consent; that he was not told that he did not need to consent; that he acted inconsistently with the consent; and that Richardson's action of throwing his hands in the air demonstrated that he did not believe he had a meaningful choice.[2] Therefore, Richardson argues, the totality-of-the-circumstances analysis demonstrates that the consent was not voluntary.

The record does indicate that Richardson was not advised of his *Miranda* rights until after he was arrested and brought to the back room of the bus terminal. Further, the record contains no indication that Investigator Lutter told Richardson of his right to withhold consent. While these facts are significant, they are not determinative in the voluntariness analysis. *See Chaidez*, 906 F.2d at 381.

---

[2]Richardson further asserts that two other facts should be included in this analysis. First, that "the [Magistrate] Court failed to consider the fact that Investigator Lutter and others used force to coerce Mr. Richardson into allegedly consenting to a search," thereby adding another reason to find that the consent was not voluntary. (Filing No. 29, 4). However, I note that there is no evidence in the record that suggests that any force was used prior to Richardson's arrest, and therefore I also will not consider force in my own examination of the totality of the circumstances.

Richardson also suggests that Investigator Lutter gave an order to Richardson, placing Richardson into custody prior to his arrest. I find this to be a distortion of the facts on the record. Richardson claims that Investigator Lutter "*ordered* [Richardson] to stop searching through the bag." (Filing No. 29, 5) (empahsis added). However, the record states, not that Investigator Lutter issued an order, but that he "*asked* [Richardson] if it was all right" if Investigator Sattlefield conduct the search. (TR 12) (emphasis added). The record indicates that Richardson was asked, not told, to stop his own search, and therefore I will not consider Richardson's additional claim in my examination of the totality of the circumstances.

7

It is undisputed that Richardson was of adequate age and intelligence, and was not under the influence of any drugs or alcohol during his encounter with the police on February 17, 2006. (Filing No. 29, 4). Richardson consented to the search after being questioned only briefly, and although he argues in his brief that he was physically threatened, there is nothing on the record to verify that assertion. Rather, the record is completely devoid of any threats, physical intimidation, or punishment prior to Richardson's consent. Further, when Richardson consented, he was standing on a terminal platform, outside, in a public place. There is no evidence of misrepresentation by Investigator Lutter in gaining Richardson's consent, and no evidence that Richardson was in custody at the time he consented. Finally, although there is some evidence of limited consent—testimony that Richardson stepped back when Investigator Lutter reached for his left sock a second time—the fact that Richardson then reached into his own sock, withdrew the marijuana, and handed it to Investigator Lutter demonstrates the scope of the search at least included examination of the marijuana.

Furthermore, Investigator Lutter was reasonable in his belief that Richardson had given his consent voluntarily. In this case, Richardson agreed to speak with the investigators; stated "go ahead" when asked if the investigators could search his bag; and although he started to unpack his bag himself, when asked if the investigator could do it, Richardson stood up and turned away from the bag with his hands in the air. When asked if he would consent to a search of his person, Richardson, without saying anything, turned and faced Investigator Lutter with his arms up away from his body. Richardson's physical gestures are important, and when considered in tandem with his words (including his

8

failure to object), I find that Investigator Lutter was reasonable in his belief that Richardson was voluntarily consenting to the search of his bag and the search of his person.

*2. Probable Cause or Reasonable Suspicion to Detain, Search, and Arrest*

As Judge Thalken stated, there are three general categories of encounters between police and citizens. First, there are consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment. *See United States v. Tarantola*, 332 F.3d 498, 499 (8th Cir. 2003). A consensual encounter is one in which "a reasonable person would feel free to 'disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). "It is well established that 'law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . [and] putting questions to him if the person is willing to listen.'" *United States v. Green*, 52 F.3d 194, 198 (8th Cir. 1995) (quoting *United States v. Campbell*, 843 F.2d 1089, 1092 (8th Cir.1988)). Second, there are investigative detentions, or *Terry* stops, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity. *See United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005). A consensual encounter becomes a *Terry* stop "when the questioning is so 'intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave.'" *Hathcock*, 103 F.3d at 718 (quoting *United States v. McKines*, 933 F.2d 1412, 1419 (8th Cir. 1991)). Finally, there are physical arrests, which must be supported by probable cause. *See* U.S. Const. amend. IV.

In this case, Investigator Lutter did not have probable cause, or even a reasonable suspicion, to detain Richardson before he produced the folded dollar bill with the marijuana inside it.  However, at no time before Richardson produced the marijuana was he detained or placed into custody.  Even acting on a mere hunch, Investigator Lutter was free to approach Richardson and engage him in conversation.  There is no evidence on the record that Investigator Lutter did anything more than simply walk up to Richardson, introduce himself, and explain his reasons for talking to Richardson.  Investigator Lutter displayed no weapon and made no attempt physically to limit Richardson's mobility through any touch. The encounter took place in a public area. Richardson said "yes" when asked if he would speak with the investigators, voluntarily consented to the searches of his bag and of his person, and voluntarily handed the marijuana to Investigator Lutter.  Once this happened, Investigator Lutter had probable cause to arrest Richardson.  Once arrested, Richardson's person and bag were lawfully searched incident to that arrest.  *See Curd v. City Court of Judsonia*, 141 F.3d 839, 842–43 (1998).

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 27) is adopted in its entirety;

2. The Statement of Objections to the Report and Recommendation (Filing No. 28) is denied; and

3. The Defendant's Motion to Suppress (Filing No. 18) is denied.

DATED this 23rd day of October, 2006.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              United States District Judge